* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to re-hear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between Plaintiff and Cape Fear Valley Health System (hereinafter referred to as "Defendant-Employer"), at all times relevant to this claim.
3. Plaintiff's average weekly wage in this case is $1,285.93, yielding the maximum compensation rate for the year 2007 of $754.00 per week.
4. The parties stipulated to the following documentary evidence at the hearing before the Deputy Commissioner:
 a. Any and all medical records from Terrill F. Brown, III, D.P.M.;
 b. Industrial Commission forms;
 c. Plaintiff's discovery responses;
 d. Cape Fear Valley Health System "Position Description" for Registered Respiratory Therapist or Registry Eligible Therapist (Plaintiff agreed to stipulate to the authenticity of this "Position Description" and agreed to stipulate to this description as a summary of the major job functions of that position; however, Plaintiff does not stipulate to this "Position Description" as being a complete and sufficiently detailed description of the physical job duties and requirements of the position.)
 * * * * * * * * * * * ISSUES
1. Whether Plaintiff's left foot condition is a compensable occupational disease for which Defendant-Employer is liable under the North Carolina Workers' Compensation Act? *Page 3 
2. Whether Plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 * * * * * * * * * * *
Based upon competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT 1. At the time of the hearing, Plaintiff was 43 years old.
2. Plaintiff has an Associates Degree in Science from Fayetteville Technical Community College. Defendant-Employer employed Plaintiff as a registered respiratory therapist since 1992.
3. Defendant-Employer operates a hospital facility. As a respiratory therapist, Plaintiff worked in a number of different units in that facility. Plaintiff typically worked 12 hour shifts. Plaintiff's position required her to either stand or walk between 11 and 12 hours per shift, although Defendant-Employer allowed and encouraged her to take two 15 minute breaks and a 30 minute meal break.
4. Plaintiff developed right foot and heel pain in March 2001, for which she sought treatment from Dr. Terrill F. Brown, III, a podiatrist. At that time, Dr. Brown diagnosed Plaintiff with plantar fasciitis in her right foot. Plaintiff was fitted for a custom orthotic and continued working.
5. In December 2006, while walking and performing her routine duties as a respiratory therapist, Plaintiff experienced a "pop" in her left foot, but she continued to work. Prior to that time, Plaintiff reported a several month history of tightness and tenderness in her left foot, which she felt more typically in the mornings. *Page 4 
6. Plaintiff sought treatment for left foot problems in January 2007 with her medical provider who referred her to Dr. Terrill Brown, a board certified Doctor of Podiatry Medicine. Plaintiff saw Dr. Brown on February 9, 2007 who diagnosed her with chronic plantar fasciitis and a rupture of the plantar fascia. On June 5, 2007, Plaintiff underwent a left plantar fascia release and a left subtalar joint implant. Dr. Brown performed both of those procedures.
7. Plaintiff last reported to work as a respiratory therapist with Defendant-Employer on February 23, 2007.
8. Plaintiff received, and continues to receive, long-term disability benefits pursuant to a wholly company funded policy with Defendant-Employer, as a result of the disability related to her plantar fasciitis.
9. Plaintiff was performing her usual job duties under normal work conditions in December 2006 at the time that she felt the "pop" in her left foot.
10. Dr. Brown opined that, as a podiatrist, plantar fasciitis was one of the main conditions for which patients came to see him, and that the condition occurred more than twice as often in females as it did in males. Further, Dr. Brown testified that one (1) in every five (5) patients that he sees on a daily basis has some sort of plantar fasciitis. In fact, Dr. Brown indicated that he has had plantar fasciitis for over 10 years, that he stands less than 30 percent of his workday, and that his plantar fasciitis is due to the fact that he has a highly arched foot.
11. According to Dr. Brown, plantar fasciitis is common in individuals who are "flat-footed," Plaintiff is "flat-footed," and the nature of Plaintiff's feet predisposes her to have plantar fasciitis. Specifically, Dr. Brown opined that there was some sort of process going on in Plaintiff's ligament that caused it to weaken, and that this process was either a degenerative process or a hereditary weakening. *Page 5 
12. Although Plaintiff attempted to establish, through Dr. Brown's testimony, that Plaintiff's job, more likely than not, placed her at an increased risk for developing plantar fasciitis, as compared with members of the general public not so equally exposed, and made a significant contribution to the development of Plaintiff's plantar fasciitis, the Full Commission gives little weight to Dr. Brown's opinions on these issues.
13. Dr. Brown's testimony that Plaintiff's employment with Defendant-Employer as a respiratory therapist caused her plantar fasciitis is unpersuasive, in light of his other testimony tending to establish that plantar fasciitis is a fairly common disorder that he treats in his practice as a podiatrist, that not all of his patients with plantar fasciitis stand or walk significant parts of the day, like Plaintiff, and that his own plantar fasciitis is not caused by standing or walking significant parts of the day, since he only spends approximately 30 percent of the day on his feet. Moreover, Dr. Brown's opinion did not take into consideration Plaintiff's medical history, including the fact that Plaintiff already had a diagnosis of right plantar fasciitis; or Plaintiff's hereditary predisposition to develop plantar fasciitis, including her gender and flat feet. Finally, Dr. Brown was unable to opine, to a reasonable degree of medical certainty, the cause of the weakening in Plaintiff's ligament, which he believes led up to her development of plantar fasciitis. Dr. Brown could only testify that either a degenerative process or hereditary weakening could have caused the weakening in the ligament. Thus, the Full Commission finds that Dr. Brown's testimony did not establish that plantar fasciitis is not an ordinary disease of life, to which the general public is equally exposed.
14. Based upon all of the competent and credible evidence of record, the Full Commission finds that Plaintiff's employment did not place her at an increased risk over the general public of contracting plantar fasciitis, or that her employment with Defendant-Employer *Page 6 
significantly contributed to the development of her plantar fasciitis. Plaintiff's job duties, which included walking and standing for long periods of time, are common to numerous other employments. The parties presented no evidence of other employees employed with Defendant-Employer who experienced foot problems as a result of walking or standing. In fact, the evidence presented through Mr. Michael Joseph Cochran, Defendant-Employer's education coordinator for the Respiratory Care Department, who is also a respiratory therapist, indicated that there was no record of any of over 200 respiratory therapists who worked for Defendant-Employer over a twelve-year period reporting foot problems, which they attributed to their employment. Further, Dr. Brown, a podiatrist affiliated with Defendant-Employer, never treated a respiratory therapist who worked for Defendant-Employer for foot-related ailments.
15. Plaintiff did not prove, by the greater weight of the evidence of record, that she developed an occupational disease which is due to causes and conditions characteristic of and peculiar to her employment, and which is not an ordinary disease of life, to which the general public is equally exposed. The competent and credible evidence of record indicates that plantar fasciitis is a fairly common foot problem, and is a disease of ordinary life to which the general public is equally exposed.
16. The competent and credible evidence of record establishes that the "pop" Plaintiff felt in her left foot in December 2006 did not constitute an injury by accident as defined under the North Carolina Workers' Compensation Act. Plaintiff was performing her usual job in her usual way when the "pop" in her left foot occurred.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following: *Page 7 
 CONCLUSIONS OF LAW
1. In order to prevail in her claim that she contracted a compensable occupational disease, Plaintiff must show that her plantar fasciitis was characteristic of persons in jobs similar to or the same as hers, that it is not an ordinary disease of life, to which the general public not so employed is equally exposed, and that there is a causal connection between her employment and the plantar fasciitis. N.C. Gen. Stat. § 97-53(13) (2007); Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983).
2. The greater weight of the competent and credible evidence establishes that Plaintiff's plantar fasciitis is not due to causes and conditions characteristic of and peculiar to her employment with Defendant-Employer. Plantar fasciitis is an ordinary disease of life, to which the general public is equally exposed, and is, therefore, not an occupational disease within the meaning of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13) (2007).
3. Plaintiff's development of plantar fasciitis did not constitute an injury by accident arising out of and in the course of her employment. The competent and credible evidence of record establishes that at the time she experienced the "pop" in her left foot, Plaintiff was performing her usual job duties in her usual way. N.C. Gen. Stat. § 97-2(6) (2007).
4. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(6); 97-53(13) (2007).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be, and the same is, DENIED.
 2. Each side shall bear its own costs.
 This the 19th day of July 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1